UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BRETTEN J. KAHN,            )
                            )
    Plaintiff               )
                            )
v.                          )    1:17-cv-00212-DBH
                            )
NANCY A. BERRYHILL, ACTING  )
COMMISSIONER, SOCIAL SECURITY )
ADMINISTRATION,             )
                            )
    Defendant               )

## REPORT AND RECOMMENDED DECISION

On Plaintiff Bretten J. Kahn's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### The Administrative Findings

The Commissioner's final decision is the April 20, 2016, decision of the

Administrative Law Judge (ALJ). (ECF No. 9-2, PageID ## 38 – 48.)[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has a severe, but non-listing-level impairment consisting of anxiety disorder, and that Plaintiff, despite his impairment, retains the residual functional capacity (RFC) to perform a full range of work at all levels of exertion provided the work does not involve interaction with the public and does not require more than occasional interaction with co-workers and supervisors. (*Id.* ¶¶ 3 – 5.) Consistent with the findings, the ALJ found that Plaintiff can no longer perform past relevant work as a home care attendant. (*Id.* ¶ 6.)

Based on the testimony of a vocational expert, the ALJ determined that a person with Plaintiff's RFC, age, and vocational background would be able to engage in substantial gainful activity in other occupations, including the representative occupations of janitor, kitchen helper, and packager. (*Id.* ¶¶ 7 – 10.) Accordingly, the ALJ concluded that Plaintiff was not under a disability during the relevant time period. (*Id.* ¶ 11.)

**Standard of Review**

A court must affirm the administrative decision provided the ALJ applied the correct legal standards and provided the decision is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v.*

---

[1] Because the Appeals Council found no reason to review that decision (ECF No. 9-2, PageID # 26), the Acting Commissioner's final decision is the ALJ's decision.

*Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**Discussion**

Plaintiff argues the ALJ erred because he (1) improperly evaluated Plaintiff's subjective report of symptoms, and (2) afforded minimal weight to the opinion of Plaintiff's treating therapist and substantial weight to the opinion of a non-examining psychological consultant. (Statement of Errors, ECF No. 13.) Through his arguments, Plaintiff challenges the ALJ's RFC determination, which is made at a stage of the sequential evaluation process at which Plaintiff retains the burden to demonstrate his incapacity to perform substantial gainful activity. *Rodriguez v. Sec'y of HHS*, 923 F.2d 840 (1st Cir. 1990); *Roberts v. Barnhart*, 67 F. App'x 621, 622 (1st Cir. 2003) (per curiam).

*1.    The ALJ's consideration of Plaintiff's statements*

Plaintiff contends the ALJ did not properly evaluate certain statements Plaintiff made regarding the degree of his limitation. As part of the RFC assessment, the ALJ evaluated Plaintiff's subjective report of symptoms pursuant to a two-step process. (R. 18 – 20, ECF No. 9-2, PageID ## 43 – 45.) Initially, the ALJ considered whether the objective medical evidence of record disclosed medically determinable impairments that reasonably could cause the degree of limitation reported by Plaintiff. (R. 19.) The ALJ concluded

3

that Plaintiff's medically determinable impairment, anxiety, could result in the limitation alleged by Plaintiff, but that the objective medical record did not independently substantiate the degree of limitation Plaintiff alleged.[2] (R. 19: "Overall, the records fail to reveal any clinical signs or objective findings to support his allegations of significant functional limitations.") The ALJ, therefore, proceeded to the second step of the evaluation process.

At the second step, the ALJ reviewed Plaintiff's statements relevant to his anxiety symptoms. In particular, the ALJ considered Plaintiff's reports that he did not like to go out in public and thus typically spends most of the day attending to the home and playing computer games, that he has no real world friends other than his fiancé,[3] that he sometimes plays computer games with online friends throughout the evening and well into the morning, that he was able to travel by public air transportation, that his travels included a trip to Disney World, and that he produced YouTube videos of some of his game playing, which generated approximately 200 subscribers to his YouTube channel. (R. 20.)

The ALJ found Plaintiff's statements to be consistent with the degree of functional limitation set forth in the RFC assessment. In addition, the ALJ observed that Plaintiff told

---

[2] In his step 3 discussion of whether Plaintiff's anxiety met a listing, the ALJ concluded that Plaintiff has mild limitation in activities of daily living, moderate limitation in social functioning, and mild limitation in the area of concentration, persistence, and pace. (R. 16.) The ALJ noted that mental status observations by providers were "relatively normal," that Plaintiff "exhibited no cognitive deficits or difficulties maintaining socially appropriate behavior," and that Plaintiff's cognition was at a "relatively high level." (R. 16.) When assessing Plaintiff's RFC, the ALJ considered Plaintiff's statements about his experience with anxiety; specifically, Plaintiff's report that he takes medication for his condition, does not like to be seen in public and feels that he is being judged, feels unsafe in stores, is fearful of others in close proximity, has been bullied in school, has difficulty getting along with supervisors, needs to take frequent breaks when engaging in activities he enjoys (video production), has problems with memory, and has periods of moodiness. (R. 18 – 19.) The ALJ also observed that Plaintiff's mental status exams were within normal limits, and that Plaintiff did not have a record of acute care or inpatient hospitalization. (R. 19 – 20.)

[3] There is evidence in the record suggesting that Plaintiff has friends other than his fiancé. (Ex. 9F, R. 414.)

a consultative examiner that he did not like the idea of working on a full-time basis, and would "hate his life if he had to work consistently and be like a zombie." (R. 20, citing Ex. 1F.)[4]

Citing Social Security Ruling 16-3p, "Evaluation of Symptoms in Disability Claims," 81 Fed. Reg. 14166-01 (Mar. 16, 2016), Plaintiff argues that the Acting Commissioner cannot consider statements Plaintiff made about his lack of interest in working on a full time basis when evaluating Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms. (Statement of Errors at 8 – 9.) Plaintiff contends the ALJ violated the Ruling and otherwise failed to evaluate properly the record regarding the degree to which Plaintiff's symptoms impair Plaintiff's functioning. (*Id.* at 5 – 8.)

The prefatory summary of Social Security Ruling 16-3p states that the Ruling "provides guidance about how [components of the Social Security Administration[5] will] evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims under Titles II and XVI of the Social Security Act (Act) and blindness claims under Title XVI of the Act." 81 Fed. Reg. at 14166. In the statement of purpose, the Ruling explains that, based on a commissioned study, the Administration determined it

---

[4] The ALJ also considered the testimony of Plaintiff's fiancé, who reported that she has to remind Plaintiff of things he needs to do around the house, and who described Plaintiff as anxious, incapable of living alone, and unwilling to leave a hotel room if too many people were staying there. She also stated that Plaintiff stays in the home 99 percent of the time, makes cool videos, cares for the couple's three cats, prepares meals when she is at work, has a driver's license, and handles money. (R. 20.)

[5] Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

should "eliminate[e] the use of the term 'credibility' from [its] sub-regulatory policy," i.e. former Ruling 96-7p, because the term does not appear in the Administration's regulations. *Id.* at 14167.

Ruling 16-3p provides that the evaluation of a claimant's symptoms is governed by a two-step process consisting of (1) a determination whether the claimant has one or more medically determinable impairments that reasonably could be expected to produce the alleged symptoms, and (2) an evaluation of the intensity and persistence of the symptoms to determine the extent of any resulting limitation in the claimant's ability to perform work-related activities. *Id.* at 14167 – 68. While the Ruling clarifies the extent to which an ALJ can rely on a credibility determination (i.e., adjudicators "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation"), the Ruling does not render immaterial evidence related to the reason a claimant might have filed a claim for disability. *Id.* at 14171. The Ruling specifically provides that the second step of the process for evaluating symptoms requires the consideration of "other evidence" if a fully favorable disability decision cannot be reached solely on the objective medical evidence. *Id.* at 14169. Such evidence "includes statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms." *Id.* The Ruling recognizes that a claimant or others might make statements that are consistent or inconsistent with the claimant's subjective reports of symptoms. Thus, the Ruling provides:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's

6

> symptoms are more likely to reduce his or her capacities to perform work-related activities for an adult …. In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities ….

*Id.* at 14170. Furthermore, the Ruling specifies that the Administration "will consider the consistency of the individual's own statements." *Id.* While consistency generally favors the claimant, inconsistency may mean, "but does not necessarily mean," that the claimant's report of symptoms is "inaccurate." *Id.* [6]

In short, the Ruling does not prevent the ALJ from considering how, if at all, Plaintiff's statement regarding his view of work is consistent or inconsistent with the record evidence. Here, the ALJ referred to the statement in the context of his evaluation of whether Plaintiff's daily activities were consistent with Plaintiff's alleged functional impairment. (R. 21 – 22.) The ALJ reasonably observed that the difference between the alleged impairment and the reported daily activities, which demonstrated work capability, could be Plaintiff's motivation to work. The Ruling does not prohibit such logical reasoning. *Roberts*, 67 F. App'x at 622 (noting the importance of keeping in mind that "resolution of conflicts in the evidence and the ultimate determination of disability are for the ALJ, not the courts"); *Smith v. Colvin*, No. 15-2521, 2016 WL 4757403, at *1 (1st Cir. Aug. 30, 2016) ("Resolving conflicts in the evidence and drawing inferences from the

---

[6] *See also*, *e.g.*, *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.").

7

record are the ALJ's prerogatives."). The ALJ's conclusions regarding Plaintiff's activities and his reported symptoms are thus supported by the record.

Plaintiff also argues the ALJ erred when he considered Plaintiff's claims regarding the impact of the medications he takes. The ALJ observed that "[p]ersistent side effects of medications, which would preclude performance of sustained competitive work over a normal workday, in the positions described by the impartial vocational expert have not been established." (R. 19.) Although Plaintiff argues the ALJ's determination constitutes error, Plaintiff has failed to direct the Court to any persuasive evidence to suggest that the side effects of Plaintiff's medications are incompatible with the RFC finding. Indeed, the opinion evidence on which Plaintiff relies to support his disability claim does not identify a medication side effect as a basis for Plaintiff's alleged disability. (Ex. 8F, ECF No. 9-7.)

*2.     The ALJ's assignment of weight to medical opinion evidence*

Plaintiff argues the ALJ erred when he assigned greater weight to the residual functional capacity opinion of a consulting examiner than he assigned to the opinion of Plaintiff's treating therapist. (Statement of Errors at 9 – 11.)

Plaintiff's therapist, Kim Patnode, LCSW, provided a Mental Residual Functional Capacity Assessment form to support Plaintiff's disability claims. Ms. Patnode, who began treating Plaintiff in June 2014, concluded that Plaintiff could not work on a regular and sustained basis due to social anxiety. (Ex. 8F, R. 395, ECF No. 9-7, PageID # 425.) Ms. Patnode found Plaintiff's limitation to be marked (seriously limited) with respect to understanding and remembering very short and simple instructions, maintaining attention and concentration for extended periods, completing a normal workday without

8

interruptions from symptoms, performing at a consistent pace without an unreasonable number of breaks, responding appropriately to changes in the work setting, and setting realistic goals or making plans independently of others. (R. 393 – 95.) Additionally, she found Plaintiff's limitation to be extreme (meaning the activity would be precluded) regarding the ability to work with others without being distracted by them, to make simple work-related decisions, to ask simple questions and request assistance, to travel and use public transportation, and to tolerate normal levels of stress. (*Id.*)

On January 26, 2015, Brian Stahl, Ph.D., upon review of the record,[7] determined that the record supported the finding of a severe anxiety disorder. (Ex. 6A, R. 104, ECF No. 9-3, PageID # 130.) Dr. Stahl assessed Plaintiff to be markedly limited in his ability to interact appropriately with the general public, and moderately limited in his ability to accept instruction and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting. (R. 106 – 107.) Dr. Stahl concluded that Plaintiff has the residual functional capacity to engage in full time work activity that does not require interaction with the public.

The ALJ gave little weight to Ms. Patnode's opinion in part because he found the opinion to be conclusory and inconsistent with the longitudinal record, and because Ms. Patnode appeared to rely on Plaintiff's subjective report of symptoms, which report could not be objectively quantified. (R. 21.) In the ALJ's view, claimant was "essentially …

---

[7] Defendant provided Plaintiff a consultative examination with Patricia Kolosowski, Ph.D., on September 19, 2013. (Ex. 1F, R. 300, ECF No. 9-7, PageID # 330.) Dr. Kolosowski's report was available to Dr. Stahl and nothing in her findings is inconsistent with Dr. Stahl's assessment. Dr. Kolosowski's report contains the statement attributed to Plaintiff regarding his disinterest in full-time work activity ("a regular job all day long"). (*Id.*, R. 302.)

high functioning," capable of independent travel and not "homebound" by anxiety, and capable of performing in the workplace to the degree reflected in the ALJ's RFC determination. (*Id.*) Under the Commissioner's regulatory scheme, the ALJ was permitted to consider and assess the medical opinions from different sources. 42 C.F.R. §§ 404.1527(f), 416.927(f). The ALJ was required to explain the weight he assigned to the opinions to permit an understanding of the ALJ's reasoning. *Id.* §§ 404.1527(f)(2), 416.927(f)(2). The ALJ provided his reasons for affording little weight to Ms. Patnode's opinion, and Plaintiff has failed to identify evidence in the record that would compel a contrary conclusion. Furthermore, Plaintiff has not identified any objective medical evidence that is inconsistent with Dr. Stahl's residual functional capacity assessment. *Id.* §§ 404.1527(c)(4), 416.927(c)(4).

Finally, Plaintiff argues that Dr. Stahl's residual functional capacity opinion cannot serve as substantial evidence in support of the ALJ's RFC finding or be assigned greater weight than Ms. Patnode's opinion because Dr. Stahl reviewed a more limited medical record than the record available to Ms. Patnode. (Statement of Errors at 11.) This Court has observed:

> There is no hard and fast rule requiring renewed evaluation by a consulting expert every time a disability claimant experiences new medical events or obtains new diagnoses in the interval between the initial DDS consultant's RFC assessment and the date of the administrative hearing. Particularly where pain is concerned, an Administrative Law Judge has the unenviable duty to make a credibility determination, 20 C.F.R. §§ 404.1529(a), (c)(1), (c)(4), 416.929(a), (c)(1), (c)(4); SSR 96–7p, and the evidence contained in new medical records may, in some cases, simply dovetail with the credibility determination. Where the dividing line exists is difficult to determine and will depend on the particular facts of a case.

*Bachelder v. SSA Comm'r*, No. 1:09-cv-436-JAW, 2010 WL 2942689, at *6 (July 19, 2010), *report and recommendation adopted*, 2010 WL 3155151 (D. Me. Aug. 9, 2010). *See also Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." (citations and internal quotation marks omitted)).

In this case, the medical records generated after Dr. Stahl's report do not include any information that could reasonably be construed to question Dr. Stahl's RFC assessment. Between Dr. Stahl's January 26, 2015, assessment of Plaintiff's RFC and the March 14, 2016, hearing before the ALJ, Plaintiff received services from Dianne Raymond, NP, at Health Reach Community Health Centers/Belgrade Regional Health Center, the same care facility with which Plaintiff treated prior to Dr. Stahl's assessment. (Ex. 9F, ECF No. 9-7.) The services included an initial diagnostic evaluation for purposes of medication management, and a series of visits for "medication management without psychotherapy." (E.g., Ex. 9F at 405.) Ms. Raymond did not offer an opinion on Plaintiff's work capacity. The records generated by Ms. Raymond's treatment did not include any information that would suggest that Dr. Stahl's opinion and the ALJ's reliance on the opinion were unsupportable.

In sum, the ALJ's evaluation of the expert opinion evidence of record did not involve the disregard of any material evidence, the misapplication of the governing law or

11

regulations, or the exercise of independent lay judgment on matters entrusted to experts. Accordingly, Plaintiff's argument regarding the ALJ's assessment of the expert evidence fails.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 18th day of January, 2018.